**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| **VASSILIKI TSITSOPOULOU,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Cause No.: 2:10-CV-309 |
| | ) | |
| **UNIVERSITY OF NOTRE DAME,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF DECISION AND ORDER**

This matter is before the Court on the motion to dismiss filed by the defendant, University of Notre Dame (docket at 7). Notre Dame also filed a memorandum in support of its motion (docket at 8). Instead of filing a responsive opposing brief, Tsitsopoulou filed a motion to amend her Complaint (docket at 9), then an amended motion to amend (docket at 11). Notre Dame also filed a motion for summary ruling (docket at 13) and a memorandum in support thereof (docket at 14). Notre Dame also filed a motion to strike (docket at 15) with a supporting memorandum (docket at 16). Tsitsopoulou later filed a response in opposition to the motion to strike, along with supporting exhibits (docket at 17), as well as a response in opposition to the motion to dismiss (docket at 18). Notre Dame filed a reply brief in support of its motion to dismiss (docket at 20); a response in opposition to plaintiff's motion to amend (docket at 21); a reply brief in support of its motion for summary ruling (docket at 22); and a reply brief in support of its motion to dismiss (docket at 30). Tsitsopoulou then filed more responsive briefs, including a brief opposing the motion to dismiss (docket at 26); a brief opposing the motion for summary ruling (docket at 27); and a brief opposing the motion to strike (docket at 28). The rather confusing pattern and timing of the briefing in this case, especially on the part of the

plaintiff, will be addressed below. However, for the reasons discussed in this Order, the Court rules as follows:

1. Defendant's motion to dismiss (docket at 7) is hereby **GRANTED**;

2. Defendant's motion for summary ruling (docket at 13) is hereby **DENIED AS MOOT**;

3. Defendant's motion to strike (docket at 15) is hereby **DENIED AS MOOT**;

4. Plaintiff's amended motion to amend (docket at 11) is hereby **DENIED**.

The Clerk of the Court is ordered to **DISMISS this case WITH PREJUDICE**.

## FACTUAL BACKGROUND

The main relevant facts in this case are undisputed. The plaintiff entered into an employment contract with the defendant in October 2005 to serve as Assistant Director for Programs and Projects in the University's Kaneb Center for Teaching and Learning. She entered into a renewed contract on July 1, 2007, which was set to expire on June 30, 2008.[1] On December 18, 2007, Ms. Christine Maziar, the University's Vice President and Senior Associate Provost, wrote a letter to Dr. Tsitsopoulou informing her that her contract would not be renewed again and her employment would be terminated effective June 30, 2008. The plaintiff initiated an appeal of this decision through the University's grievance procedure, but the decision to terminate her was upheld. On September 17, 2009, the plaintiff filed a Charge of Discrimination

---

[1] Notre Dame attached a copy of the plaintiff's most recent contract as Exhibit 1 to its memorandum in support of its motion to dismiss. As the University points out in its brief, "[b]ecause Dr. Tsitsopoulou specifically referred in her complaint to her contract and the letter notifying her the contract would not be renewed . . ., the Court may appropriately consider the contract and letter without converting the University's motion to dismiss into a motion for summary judgment." Defendant's Memorandum, docket at 8, p. 2, n. 1 (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009)). The University is correct on this point. And, since the dispositive issues before the Court are clear and the briefing is already somewhat voluminous, it is unnecessary to convert the motion to a motion for summary judgment.

with the Indiana Department of Human Rights and the EEOC, alleging sex discrimination, national origin discrimination (the plaintiff is Greek), retaliation, and breach of contract. Plaintiff's Response to Defendant's Motion to Strike, docket at 17, Proposed Amended Complaint, Exh. A. In her Charge of Discrimination, the plaintiff alleged that the last act of alleged discrimination took place on January 16, 2008. *Id*. On May 6, 2010, the EEOC issued the plaintiff a Dismissal and Notice of Rights letter. *Id*., Exh. B. The Commission dismissed the plaintiff's administrative proceeding, stating that her "charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge." *Id*. The plaintiff then filed the present lawsuit on July 30, 2010, reiterating the claims she made in her Charge of Discrimination and adding Indiana state-law claims for wrongful discharge and intentional infliction of emotional distress. Verified Complaint, docket at 1, p. 3. Notre Dame argues in its motion to dismiss that all of the plaintiff's claims should be dismissed because they fail to state a claim upon which relief can be granted and because they are time-barred. Motion to Dismiss, docket at 7.

### MOTION TO DISMISS STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* ---U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic*

*Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).[2] As the Supreme Court has stated, "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1940 (quoting *Twombly,* 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* (citing *Twombly,* 550 U.S. at 570). The Seventh Circuit has synthesized the standard into three requirements. *See Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009). "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* If the plaintiff's allegations fail to raise her claims above a speculative level, then she "pleads [herself] out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

---

[2] In *Twombly* the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [ *Conley v. Gibson,* 355 U.S. 42, 47 (1957) ] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618, (7th Cir. 2007).

## DISCUSSION

### I. DEFENDANT'S MOTION TO DISMISS

**A. Gender and National Origin Claims.**

As stated above, Notre Dame argues in its motion to dismiss that Tsitsopoulou's claims must be dismissed, not because of any vagueness in the pleading of the Complaint (which, on the contrary, is probably overly detailed at 81 pages long and more than 165 rhetorical paragraphs), but because the plaintiff's factual allegations and legal theories essentially "plead her out of court." Specifically, the defendant states that the plaintiff's "sex and national origin discrimination claims brought under Title VII . . . and her state law claim of intentional infliction of emotional distress were not filed within the relevant statute of limitations period. Her breach of contract and wrongful discharge claims fail to state a claim upon which relief can be granted because they are not supported by sufficient factual allegations, and her wrongful discharge claim is time-barred." Motion to Dismiss, p. 1.

In its memorandum in support of its motion to dismiss, Notre Dame argues that the plaintiff's "Title VII claims . . . are time-barred because they were not filed within 300 days after the University notified her that her employment contract would not be renewed, as required by 42 U.S.C. § 2000e-5(e)(1). Her common-law breach of contract and wrongful discharge claims should be dismissed because she fails to allege sufficient facts to support either cause of action, and because the wrongful discharge claim is untimely. Her claim of intentional infliction of emotional distress must be dismissed as it was filed outside the two-year limitations period." Defendant's Memorandum in Support of Motion to Dismiss, p. 1.

Tsitsopoulou concedes that "[t]he central issue in this case is whether or not Vassiliki's EEOC sex and national origin charge was timely filed. If it was not, her suit is time-barred and must be dismissed." Plaintiff's Memorandum in Opposition to Motion to Dismiss, p. 4 (citing *Stewart v. County of Brown*, 88 F.3d 107, 110 (7th Cir. 1996)). But, she says, she "disagrees with the defendant's view of the factual basis of her complaint and the applicable time limitation. . . . Notre Dame denied [plaintiff's] request for reconsideration on May 26, 2009, thus permanently terminating plaintiff's employment with Notre Dame and concluding Notre Dame's administrative process. . . . Hence, because the last discriminatory act occurred on May 26, 2009 when Notre Dame denied her request for reconsideration, [plaintiff's] administrative complaint filed with the EEOC on September 17, 2009 was timely filed and is not time barred." *Id.*, pp. 4-5. Tsitsopoulou cites no authority for her argument that this later date (or *any* date beyond December 18, 2007–the actual date of the adverse employment action) should be the date on which the relevant limitations periods commenced. And, as will become clear below, her argument fails anyway in light of the clear prevailing case law.

The University bases its argument for dismissal on the time line of the events that resulted in Tsitsopoulou's termination. That is, she was informed on December 18, 2007, in writing, that her employment contract would not be renewed and that her employment with Notre Dame would end on June 30, 2008. As the University correctly points out, Title VII claims of discrimination must be filed with the EEOC (or equivalent local or state agency) "within 300 days 'after the alleged unlawful employment practice occurred.'" *Id.*, p. 2 (quoting 42 U.S.C. § 2000e-5(e)(1). The University points out that it "notified Dr. Tsitsopoulou on December 18, 2007 that her employment was not renewed and was terminated. . . . She had 300

Tsitsopoulou concedes that "[t]he central issue in this case is whether or not Vassiliki's EEOC sex and national origin charge was timely filed. If it was not, her suit is time-barred and must be dismissed." Plaintiff's Memorandum in Opposition to Motion to Dismiss, p. 4 (citing *Stewart v. County of Brown*, 88 F.3d 107, 110 (7th Cir. 1996)). But, she says, she "disagrees with the defendant's view of the factual basis of her complaint and the applicable time limitation. . . . Notre Dame denied [plaintiff's] request for reconsideration on May 26, 2009, thus permanently terminating plaintiff's employment with Notre Dame and concluding Notre Dame's administrative process. . . . Hence, because the last discriminatory act occurred on May 26, 2009 when Notre Dame denied her request for reconsideration, [plaintiff's] administrative complaint filed with the EEOC on September 17, 2009 was timely filed and is not time barred." *Id.*, pp. 4-5. Tsitsopoulou cites no authority for her argument that this later date (or *any* date beyond December 18, 2007–the actual date of the adverse employment action) should be the date on which the relevant limitations periods commenced. And, as will become clear below, her argument fails anyway in light of the clear prevailing case law.

The University bases its argument for dismissal on the time line of the events that resulted in Tsitsopoulou's termination. That is, she was informed on December 18, 2007, in writing, that her employment contract would not be renewed and that her employment with Notre Dame would end on June 30, 2008. As the University correctly points out, Title VII claims of discrimination must be filed with the EEOC (or equivalent local or state agency) "within 300 days 'after the alleged unlawful employment practice occurred.'" *Id.*, p. 2 (quoting 42 U.S.C. § 2000e-5(e)(1). The University points out that it "notified Dr. Tsitsopoulou on December 18, 2007 that her employment was not renewed and was terminated. . . . She had 300

Tsitsopoulou concedes that "[t]he central issue in this case is whether or not Vassiliki's EEOC sex and national origin charge was timely filed. If it was not, her suit is time-barred and must be dismissed." Plaintiff's Memorandum in Opposition to Motion to Dismiss, p. 4 (citing *Stewart v. County of Brown*, 88 F.3d 107, 110 (7th Cir. 1996)). But, she says, she "disagrees with the defendant's view of the factual basis of her complaint and the applicable time limitation. . . . Notre Dame denied [plaintiff's] request for reconsideration on May 26, 2009, thus permanently terminating plaintiff's employment with Notre Dame and concluding Notre Dame's administrative process. . . . Hence, because the last discriminatory act occurred on May 26, 2009 when Notre Dame denied her request for reconsideration, [plaintiff's] administrative complaint filed with the EEOC on September 17, 2009 was timely filed and is not time barred." *Id.*, pp. 4-5. Tsitsopoulou cites no authority for her argument that this later date (or *any* date beyond December 18, 2007–the actual date of the adverse employment action) should be the date on which the relevant limitations periods commenced. And, as will become clear below, her argument fails anyway in light of the clear prevailing case law.

The University bases its argument for dismissal on the time line of the events that resulted in Tsitsopoulou's termination. That is, she was informed on December 18, 2007, in writing, that her employment contract would not be renewed and that her employment with Notre Dame would end on June 30, 2008. As the University correctly points out, Title VII claims of discrimination must be filed with the EEOC (or equivalent local or state agency) "within 300 days 'after the alleged unlawful employment practice occurred.'" *Id.*, p. 2 (quoting 42 U.S.C. § 2000e-5(e)(1). The University points out that it "notified Dr. Tsitsopoulou on December 18, 2007 that her employment was not renewed and was terminated. . . . She had 300

days, until mid-October 2008, to file an EEOC charge. She did not file her charge until September 17, 2009 . . ." and the EEOC dismissed the charge as untimely. *Id.* Most importantly, and this is the crux of the debate on this point, the University states that "[t]he fact that Dr. Tsitsopoulou appealed the University's decision for non-renewal . . . does not toll the statute of limitations." Notre Dame cites several cases to support this contention, including *Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980); *Williamson v. Indiana University*, 345 F.3d 459, 463 (7th Cir. 2003); and *Hedrich v. Board of Regents of The University of Wisconsin System*, 274 F.3d 1174, 1182 (7th Cir. 2001). The University is correct. In *Delaware State College*, the plaintiff was denied tenure and later filed suit under Title VII and 42 U.S.C. § 1981, alleging that the decision to deny him tenure was the result of national origin discrimination. The College argued that the plaintiff's claims were time-barred since they were not filed within the applicable limitations period, which the College maintained began to run on the date the President of the Board of Trustees notified the plaintiff of the decision not to award tenure. The plaintiff filed a grievance after receiving the notification and argued, as Tsitsopoulou does here, that the limitations period did not commence to run until the Board of Trustees denied his grievance, which was several months *after* he received the notice from the President. The plaintiff was essentially arguing that he was subjected to a "continuing violation" of the civil rights laws and so the limitations period did not begin to run on the date he was informed of the "final" adverse decision, i.e., the decision to deny his appeal. Again, Tsitsopoulou is making the same argument, contending that the discrimination she allegedly

7

suffered continued until the final rejection of her grievance.³  The Supreme Court held that the limitations period began to run on the date the defendant's President informed the plaintiff of the College's decision.  The Court held that this was so "even though one of the *effects* of the denial of tenure–the eventual loss of a teaching position–did not occur until later."  *Delaware State College*, 449 U.S. at 258 (italics in original).  In *Williamson*, the plaintiff was a former assistant professor whose employment contract with Indiana University was terminated.  She sued under Title VII alleging sex discrimination.  The district court granted summary judgment in favor of the University, holding that the plaintiff's claim had not been filed within the limitations period, which he concluded began to run on the date she was informed that she would not be reappointed to her position.  The Seventh Circuit affirmed, relying in part on the U.S. Supreme Court's decision in the Delaware State College case.  The Seventh Circuit held that "because the decision not to reverse an adverse employment decision is not a fresh act of discrimination, an employee cannot toll the limitations period by pursuing grievance proceedings."  *Williamson*, 345 F.3d at 463 (citing *Delaware State College* and *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 373 (7th Cir. 2001)).  Finally, in *Hedrich*, the plaintiff filed suit against the state university alleging that the decision to deny her tenure application violated her rights under Title VII.  The Seventh Circuit held that "Hedrich had 300 days from the time she suffered her adverse employment action–the denial of tenure–to file her complaint with the . . . EEOC."  *Hedrich*, 274 F.3d at 1182.  The court rejected Hedrich's argument that the limitations period did not begin to run

---

³ Tsitsopoulou attempts to argue a "continuing violation" theory that would toll the applicable statute of limitations until the date the University denied her administrative appeal.  *See* Plaintiff's Memorandum in Opposition to Motion to Dismiss, pp. 7-10.  This argument is unavailing in light of the clear case law rejecting such an argument as set forth in *Delaware State College, Williamson* and *Hedrich*.

until later, when her administrative appeals were rejected. The district court had rejected this argument and the Seventh Circuit agreed, holding that "the mere fact that Hedrich had avenues available (or created avenues) to appeal [the adverse] decision did not alter the fact that [the] decision was final for purposes of the limitations period on her Title VII claim." *Id*.

These cases make it clear, as Notre Dame argues, that the limitations period on Tsitsopoulou's sex and national origin discrimination claims commenced to run on December 18, 2007, when the decision to terminate her employment was communicated to her. She filed her claims with the EEOC on September 17, 2009, well outside the 300-day limitation period prescribed by Title VII. Therefore, these claims must be dismissed as untimely. Being untimely, they fail to state claims upon which relief can be granted.

**B. Emotional Distress Claim.**

Tsitsopoulou's state law claim for intentional infliction of emotional distress is, of course, based on the same factual underpinnings as her federal discrimination claims. As Notre Dame correctly states, "[t]he Indiana statute of limitations for intentional infliction of emotional distress is two years." Defendant's Memorandum in Support of Motion to Dismiss, p. 3 (citing Ind. Code § 34-11-2-4). The University points out that the last possible date on which such a claim could have accrued, by the plaintiff's own admission, was January 16, 2008, the date "when the University advised Dr. Tsitsopoulou of the reasons why her employment was not renewed." *Id*. (The University also notes that this is the date Tsitsopoulou stated on her EEOC Charge as being the last date on which she allegedly suffered some sort of discriminatory action.) Thus, the University contends that "[a]t the very latest, the statute of limitations for the intentional infliction of emotional distress claim expired in January 2010. Dr. Tsitsopoulou filed

9

her Complaint on July 30, 2010.  Her claim for intentional infliction of emotional distress is time-barred and should be dismissed.

In response, Tsitsopoulou argues–yet again–that "[t]he conduct of [the plaintiff's] superiors giving rise to the hostile work environment did not end in December 2007 but continued to May 2009 when Notre Dame . . . denied her request for reconsideration." Plaintiff's Memorandum in Opposition to Motion to Dismiss, pp. 15-16.  The Court rejects this argument for two reasons, as explained below.

The date of the adverse employment action giving rise to this lawsuit was the date the plaintiff was notified that her employment contract would not be renewed, as is clear from the facts and the case law discussed above.  At the very latest, perhaps, the plaintiff could advance the argument that the last date she suffered intentional infliction of emotional distress was June 30, 2008, the date on which her employment at Notre Dame officially ended.  Even if this were the case, it does not make her present claim timely since her lawsuit was not filed until July 17, 2010.  But there is another reason why her state law cause of action fails to state a claim.  As Notre Dame points out, the tort of intentional infliction of emotional distress in Indiana requires "extreme and outrageous conduct" on the part of a defendant.  Defendant's Reply in Support of Motion to Dismiss, p. 5 (quoting *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991)).  As the University also points out, federal courts have determined that emotional distress claims based solely on adverse employment decisions do not involve the type of "extreme and outrageous conduct" that supports such a tort claim.  Notre Dame cites the cases of *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (affirming dismissal of plaintiff's emotional distress claim based on former employer's alleged racial discrimination); *Gaskins v. Vencor,*

*Inc.*, 2001 WL 300517 (S.D. Ind. March 26, 2001) (dismissing intentional infliction of emotional distress claim based on alleged sexual harassment); *Lemaster v. Spartan Tool, LLC*, 2009 WL 700240 (S.D. Ind. March 16, 2009) (adverse employment situations rarely constitute extreme and outrageous conduct required to sustain tort of emotional distress); and *Godfredson v. Hess & Clark*, 173 F.3d 365 (6th Cir. 1999) (an employee's termination, even if based on illegal discrimination, does not rise to the level of extreme and outrageous conduct necessary to sustain tort claim for emotional distress). Notre Dame argues that its "decision to deny Dr. Tsitsopoulou's reconsideration request cannot be considered 'outrageous' conduct sufficient to maintain an intentional infliction of emotional distress claim under established precedent." *Id.*, p. 6. The Court agrees that the facts of this case and the case law make it clear that the only adverse action Tsitsopoulou allegedly suffered at the hands of the University that could be said to have caused her emotional distress would be the notification–on December 18, 2007–that her employment with the University would be coming to an end.[4] And in any event, her claim is untimely as it was filed more than two years after that date and, consequently, fails to state a claim upon which relief can be granted. For these reasons, the claim will be dismissed.

**C. Breach of Contract Claim.**

---

[4] Given the case law, it is difficult to imagine that Tsitsopoulou could establish a prima facie case of intentional infliction of emotional distress based on her dismissal. Under Indiana law, the tort of intentional infliction of emotional distress is defined as "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another . . . It is the intent to harm one emotionally that constitutes the basis for [this tort]." *Cullison*, 570 N.E.2d at 31. "The requirements to prove this tort are rigorous. . . . [It is] found where conduct exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind[.] In the appropriate case, the question can be decided as a matter of law." *Branham*, 744 N.E.2d at 523. Be that as it may, the Court is not addressing the merits of this claim.

11

Notre Dame argues that Tsitsopoulou's claim for breach of contract must also be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) since the factual allegations she puts forth to support it do not state a claim for breach of contract under Indiana law (and because the legal arguments she posits are simply wrong). As the University points out: "To state a claim for breach of contract under Indiana law, Dr. Tsitsopoulou must allege: (1) the existence of a contract, (2) the University's breach thereof, and (3) damages." Defendant's Memorandum in Support of Motion to Dismiss, p. 5 (citing *Niezer v. Todd Realty, Inc.*, 913 N.E.2d 211, 215 (Ind.Ct.App. 2009)). In this case, the University argues, Tsitsopoulou "fails to identify the contract that the claim is based on. She fails to identify any provision of the contract that was breached, and she fails to specify any alleged damages. Therefore, she has failed to state a claim for breach of contract as a matter of law." *Id*. It is undisputed, of course, that the employment contract between Tsitsopoulou and Notre Dame that was not renewed could not have been the contract that was allegedly breached, since it terminated on June 30, 2008, the date it was *supposed* to have terminated anyway. It is also undisputed that Tsitsopoulou has not identified any provision of that contract that was allegedly breached. Instead, Tsitsopoulou responds to Notre Dame's motion to dismiss by arguing that the "contract" that was breached was Notre Dame's Faculty Handbook. Plaintiff's Memorandum in Opposition to Motion to Dismiss, p. 18. More specifically, she points to one line in that Handbook that states: "The appointment of [the assistant professional specialist] may be renewed on mutually agreeable terms." *Id*. But as the University notes, Tsitsopoulou ignores the words "*may be renewed*" when claiming that by not following its procedural handbook, Notre Dame somehow breached a contract with her. Her contract was not renewed–that fact is not in dispute. But it was *not* her employment contract that

was breached, since she does not dispute that Notre Dame was within its rights *not* to renew it. Instead, she argues that the University somehow did not follow a provision in its Faculty Handbook and that this constitutes the breach of a specific contract. The Court does not accept this convoluted argument. Just as importantly, as the University points out, "[t]he Indiana Supreme Court has declined 'to construe employee handbooks as unilateral contracts and to adopt a broad new exception to the at-will doctrine for such handbooks . . .'" Defendant's Memorandum in Support of Motion to Dismiss, pp. 6-7.

Perhaps most importantly of all, the plaintiff's Complaint in this case, when discussing the breach of contract claim, refers *only* to the employment contract which was terminated pursuant to its terms. The fact that Tsitsopoulou alleges that the failure to renew that contract was based on illegal discrimination does not provide a legal basis for asserting a claim of breach of contract. And, she cannot now, in response to a motion to dismiss, claim that it was another document altogether–the Faculty Handbook–that constitutes the contract that was allegedly breached. This is especially true given that her Complaint is a whopping 81 pages long and contains 165 paragraphs of factual recitations and allegations (not including dozens of sub-paragraphs). The portion of her Complaint dedicated to her breach of contract claim alone consists of 14 pages. Throughout those pages, she refers repeatedly to her employment contract and claims that Notre Dame breached it by not renewing it (and by using an improper performance evaluation to hide their discriminatory intent). For all of these reasons, Tsitsopoulou's breach of contract claim fails to state a claim upon which relief can be granted, and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

**D. Wrongful Discharge Claim.**

Tsitsopoulou's final claim is a state law claim for wrongful discharge. Complaint, Part 2, pp. 25-38. Her allegations supporting this claim are that the University's "decision not to renew Plaintiff's contract of employment alleging her poor performance was inconsistent with the outcome of the Performance Evaluation that was performed by the Defendant and the record of her accomplishments at the University of Notre Dame." *Id*., p. 37. She also alleges that "Notre Dame breached the terms of Plaintiff's employment when it failed to follow and/or comply with its own guidelines and policies as it relates to the Complainant's performance review" and by allegedly using the wrong performance review form when conducting her evaluation. *Id*. Unfortunately for Tsitsopoulou, these allegations do not constitute a claim of wrongful discharge under Indiana law.

The University first points out that the statute of limitations for a wrongful discharge claim in Indiana is two years. Defendant's Reply in Support of Motion to Dismiss, p. 7 (citing Ind. Code § 34-11-2-1 and *Al Challah v. Barger Packaging*, 820 N.E.2d 670, 672 (Ind.Ct.App. 2005)). The University argues that it "notified Dr. Tsitsopoulou on December 18, 2007 that her employment would end on June 30, 2008. . . . She filed this lawsuit on July 30, 2010–well after the limitations period expired." *Id*. Just as importantly, as Notre Dame points out, "Dr. Tsitsopoulou ignores the on-point authority cited by the University holding that, to state a claim for wrongful discharge under Indiana law, a plaintiff must allege that she had a contract of employment for a specific duration that was improperly terminated ***before the contract expired***." *Id*. (citing *Rice v. Grant County Board of Commissioners*, 472 N.E.2d 213, 214 (Ind.Ct.App. 1984); *United States Reduction Co. v. Nussbaum*, 42 N.E.2d 403, 404-05 (Ind.Ct.App. 1942); and *Schmidt v. International Truck and Engine Corp*., 2008 WL 4998375 *3 (N.D. Ind. 2008)

(emphasis in original)). It is undisputed in this case that Tsitsopoulou was notified on December 18, 2007, that her contract would not be renewed and would expire, by its express terms, on June 30, 2008–the last day the contract would have been in place anyway.

Tsitsopoulou attempts to argue around the well established law by pointing out that Indiana recognizes certain instances in which an employee can bring a wrongful discharge claim even without an employment contract. Plaintiff's Response in Opposition to Motion to Dismiss, pp. 21-22. Unfortunately, as the University points out, the cases she cites in support of this argument discuss *only* wrongful discharge cases that can be brought (in very limited instances) by *at-will employees*.[5] Tsitsopoulou was *not* an at-will employee–she was employed pursuant to a written employment contract that the University chose not to renew at the end of its term. After citing and discussing these inapplicable cases, Tsitsopoulou then argues that she "protested and opposed Notre Dame's discriminatory conduct . . ." and that "[h]er employment was not renewed but was terminated in retaliation for her protest and opposition to discrimination." Plaintiff's Reply in Opposition to Motion to Dismiss, p. 22. But this makes no sense, since a claim of retaliatory discharge for opposing discriminatory practices is a federal claim under Title VII, not a state-law wrongful discharge claim. Furthermore, while Tsitsopoulou checked the box next to "Retaliation" on her EEOC Charge of Discrimination, she does not assert such a claim in her Complaint. Even if she did, it would have to be dismissed for the same reasons her sex and

---

[5] The cases cited by Tsitsopoulou include, *inter alia*, *Frampton v. Central Indiana Gas Co.*, 297 N.E.2d 425 (Ind. 1973) and *McClanahan v. Remington Freight Lines*, 517 N.E.2d 390 (Ind. 1988). Plaintiff's Response in Opposition to Motion to Dismiss. These two famous cases created limited exceptions to the "at-will" employment doctrine that has long been the established law in Indiana. But again, Tsitsopoulou was *not* an at-will employee and these cases are inapplicable to her claims.

15

national origin claims must be dismissed, i.e., it was untimely. Accordingly, Tsitsopoulou states no valid state-law wrongful discharge claim against the University and this claim, like all her others, must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## II. DEFENDANT'S MOTION FOR SUMMARY RULING

In this motion, Notre Dame asked the Court to rule on its motion to dismiss even in the absence of any responsive pleading on the part of Tsitsopoulou, arguing that she "has failed to respond to the University's motion to dismiss her complaint. She has provided nothing to refute the University's contention that her . . . claims . . . should be dismissed because they are either untimely or not supported by sufficient facts." Memorandum in Support of Motion for Summary Ruling, p. 2. The point the University was making at the time this motion was filed was legitimate. Tsitsopoulou had failed to file a brief in opposition to the motion to dismiss. Instead, she filed her motion to amend her complaint.[6] Thus, Notre Dame asked the Court to rule on its motion to dismiss notwithstanding the fact that Tsitsopoulou had failed to file a timely pleading in opposition to it. The University is correct that the Court could take such action. Motion for Summary Ruling, p. 2 (citing Local Rule 7.1(a) and *Elayyan v. Sol Melia*, 571 F.Supp.2d 886 (N.D. Ind. 2008) (court held that plaintiffs' responses to defendants' motion to dismiss were untimely and court ruled on motion to dismiss without considering those responses)).

When Tsitsopoulou finally got around to filing a response in opposition to the motion to dismiss, she stated, rather curiously, that "[a]ttached to this response is Plaintiff's proposed amended complaint *which answers most of the objections* raised by this Defendant in its motion

---

[6] Actually, she filed two motions to amend. The first one (docket at 9) asked the Court to grant her until October 7, 2010, to file an amended complaint. The second one (docket at 11) asked the Court to grant her until November 8, 2010, to do so.

to dismiss." Plaintiff's Response to Defendant's Motion to Dismiss, docket at 17, p. 1 (italics added). Tsitsopoulou does not specify which objections her proposed amended complaint would answer and which it would not. But in any case, this is not a proper method by which to submit a proposed amended complaint, as will be discussed below. Nor is attaching a proposed amended complaint to a brief in opposition to a motion to dismiss a proper response to such a motion. Tsitsopoulou did not follow this Court's rules of procedure in order to bring her proposed amended complaint properly before the Court. Not only that, but Tsitsopoulou's "response" to the motion to dismiss–that is, the one she filed on November 4, 2010–did not include any brief opposing the motion. It amounted to nothing more than a backwards way to attempt to get her proposed amended complaint docketed. Her actual *brief* in opposition to the motion to dismiss (docket at 26) was not filed for many more weeks, on December 20, 2010.[7]

The long and short of it is that the University's motion for summary ruling will be DENIED as moot, since the Court did consider Tsitsopoulou's brief in opposition to the motion to dismiss. Since she clearly fails to state any claim against the University upon which relief can

---

[7] Tsitsopoulou's responsive brief in opposition to the motion to dismiss was originally due on or about October 4, 2010. Instead of filing a substantive response, she filed her motions to amend. All of Notre Dame's motions were filed by October 21, 2010. On November 4, 2010, Tsitsopoulou filed what she labeled as a response to the motion to dismiss (docket at 18) and a response to the motion to strike (docket at 17). These were not substantive responses to the motions at all–they were simply "back door" attempts to submit her amended complaint (which was, for the first time, attached to her response to the motion to strike). Then, a month later, on December 3, 2010, Tsitsopoulou filed a motion for extension of time, asking the Court for additional time to file her substantive responses to all of the University's pending motions. *See* docket at 23. Magistrate Judge Andrew P. Rodovich, to whom this case was on partial referral, granted that motion and gave Tsitsopoulou until December 20 to file her responses, which she finally did. Since the Magistrate Judge granted her additional time, and her substantive response to Notre Dame's motion to dismiss was finally filed, this would be another basis on which to deny the University's motion for summary ruling.

be granted, the motion for summary ruling is moot.

### III.  DEFENDANT'S MOTION TO STRIKE

In its motion to strike filed on October 21, 2010 (docket at 15), Notre Dame asked the Court "to strike Plaintiff[s] . . . motion to amend her complaint[.]" since she had failed to attached a copy of her proposed amended complaint to her motion to amend (either one of them). The University is correct that pursuant to Local Rule 15.1, "A party who moves to amend a pleading *shall* attach the original of the amendment to the motion."  Of course, the Court has the discretion to grant the motion anyway, or to deny it without prejudice to permit the plaintiff to correct the error.  Still, rather than file yet another amended motion to amend, and attach a copy of her proposed amended complaint, Tsitsopoulou chose to wait two months and attach it to her response to the motion to dismiss, which is unacceptable.

Despite the lack of adherence to the local rules, Notre Dame's motion to strike is hereby DENIED as moot.  Since all of Tsitsopoulou's claims must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), the motion to strike her motion to amend is rendered moot.

### IV.  PLAINTIFF'S MOTION TO AMEND COMPLAINT

As just discussed, Tsitsopoulou filed a motion to amend her complaint (docket at 9) and then, on the same day, filed an amended motion to amend (docket at 11).  As also just discussed, Tsitsopoulou did not follow the proper procedure since she did not attached a copy of her proposed amended complaint to either her original or her amended motion.  It is well established that, as a general rule, amendments to the pleadings should be liberally allowed.  *Firestone v.*

18

*Standard Management Corp.*, 2005 WL 1799442 (S.D. Ind. July 13, 2005). However, that general rule anticipates that the party moving to amend will follow the proper procedure to do so, both under the Federal Rules and a court's local rules. Tsitsopoulou did not do this.

But there is a more substantive reason to deny the plaintiff's motion to amend. That is, her proposed amended complaint attached to her "response" to the motion to dismiss does absolutely nothing to change the outcome in this case. Her sex and national origin claims are untimely and not supported by her allegations. Likewise, her Indiana state-law claims of intentional infliction of emotional distress, breach of contract, and wrongful discharge suffer from the same legal and factual defects. Her proposed amended complaint, which the Court carefully reviewed, cannot rescue her claims, all of which must be dismissed pursuant to Rule 12(b)(6). Therefore, her motion to amend her complaint is DENIED.

## CONCLUSION

For the reasons set forth above, the Court rules as follows:

1. Defendant's motion to dismiss (docket at 7) is hereby **GRANTED**;

2. Defendant's motion for summary ruling (docket at 13) is hereby **DENIED AS MOOT**;

3. Defendant's motion to strike (docket at 15) is hereby **DENIED AS MOOT**;

4. Plaintiff's amended motion to amend (docket at 11) is hereby **DENIED**.

The Clerk of the Court is ordered to **DISMISS this case WITH PREJUDICE**.

Date: March 7, 2011.

/s/   William C. Lee
William C. Lee, Judge

20